AF Approval *TLK for SCN*    Chief Approval __DMB__

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.    CASE NO. 8:25-cr-108-WFJ-NHA

SHANNON NICOLE SAMLALSINGH,
a/k/a SHANNON NICOLE LEE

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Sara C. Sweeney, Acting United States Attorney for the Middle District of Florida, and the defendant, Shannon Nicole Samlalsingh, a/k/a "Shannon Nicole Lee," and the attorney for the defendant, Mark J. O'Brien. Esq., mutually agree as follows:

### A.  Particularized Terms

1.  Count Pleading To

The defendant shall enter a plea of guilty to Count One of the Information. Count One charges the defendant with conspiracy to make false statements to a firearm dealer, in violation of 18 U.S.C. §§ 371 and 922(a)(6).

2.  Maximum Penalties

Count One carries a maximum term of imprisonment of five (5) years, a fine of not more than $250,000, a term of supervised release of not more than three (3) years, and a special assessment of $100.

Defendant's Initials

3.    Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.

The elements of Count One are:

First:    Two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second:    The Defendant knew the unlawful purpose of the plan and willfully joined in it;

Third:    During the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

Fourth:    The overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy

4.    No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

2

5.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

6.   Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials                      3

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

7.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's

Defendant's Initials                     4

possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

Defendant's Initials (SS)    5

8.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

9.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest

Defendant's Initials _____        6

knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)    The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)    The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by

Defendant's Initials _SS_                    7

information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)    The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)    The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)    The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials                 8

10.     Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written

Defendant's Initials                     9

judgment at any time pursuant to Rule 36.

The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing. To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the

Defendant's Initials SS                          10

surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

Defendant's Initials _SS_                    11

11.    <u>Abandonment of Property - Firearms and Ammunition</u>

The United States of America and defendant hereby agree that any firearm and/or ammunition as defined in 18 U.S.C. § 921, seized from defendant and currently in the custody and/or control of the Bureau of Alcohol, Tobacco and Firearms, were properly seized and are subject to forfeiture to the government according to 18 U.S.C. § 924(d) and/or that the firearms and ammunition constitute evidence, contraband, or fruits of the crime to which she has pled guilty. As such, defendant hereby relinquishes all claim, title and interest she has in the firearms and ammunition to the United States of America and agrees to the administrative forfeiture or destruction of the firearms and ammunition by the Bureau of Alcohol, Tobacco and Firearms and further waives any right to receive notice of any administrative forfeiture proceeding involving the firearms and ammunition.

As part of the plea agreement in this case, the defendant hereby voluntarily abandons all right and claim to the following items seized by authorities in Trinidad and Tobago on or about April 22, 2021, which had been shipped from Miami, Florida to Piarco International Airport via Laparkan Airways, Inc.:

    a.    One SAR Arms SAR-9 9mm pistol bearing serial number T1102-20BV75451;

Defendant's Initials           12

b.    One Ruger Security-9 9mm pistol bearing serial number 384-03519;

c.    One Taurus G3 9mm pistol bearing serial number ABN369536;

d.    One Taurus G2C 9mm pistol bearing serial number ABL113463;

e.    One Taurus G2C 9mm pistol bearing serial number TLT70544;

f.    One Taurus G3 9mm pistol bearing serial number ABC401000;

g.    One Taurus G3 9mm pistol bearing serial number ABC405471;

h.    One Glock 19 9mm pistol bearing serial number WGX286;

i.    One Glock 19 9mm pistol bearing serial number BFUZ185;

j.    One Ruger .38 special caliber revolver being serial number 542-63242;

k.    One Bulldog 12-gauge semi-automatic shotgun bearing serial number 12BD20-2415;

l.    One desert-brown pistol of unspecified make and model with black slide;

m.    One brown pistol of unspecified make and model with black slide;

n.    One pistol of unspecified make and model;

o.    Three AR-15 barrel foregrips;

p.    19 lower pistol grip assemblies/lower receivers;

q.    11 forearm bolt assemblies/upper receivers;

Defendant's Initials                 13

r.   Three AR-15-style barrels with forearm grips;

s.   Two shotgun chokes;

t.   One AR-15 drum magazine;

u.   32 AR-15 magazines;

v.   34 9mm magazines;

w.   Three 9mm drum magazines;

x.   Six magazine couplers;

y.   AR-15 ammunition, 9mm ammunition, .38 caliber ammunition, and shotgun shells;

z.   One Romarm/Cugir model Micro Draco 7.62 caliber pistol bearing serial number PMD-11014-19; and

aa.  One Taurus model PT111 G2A 9mm pistol bearing serial number TMB66883.

**B.    Standard Terms and Conditions**

1.   Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement. The defendant further

Defendant's Initials                                 14

understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no limitation as to fine.

2. **Supervised Release**

The defendant understands that the offenses to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3. **Immigration Consequences of Pleading Guilty**

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed

Defendant's Initials      15

from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the counts to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition. The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by

Defendant's Initials                     16

a spouse, dependent, nominee or other third party. The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this Plea Agreement, consents to the release of the defendant's tax returns for the previous five years. The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines, restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6. Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to

Defendant's Initials           17

make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. The defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

7.    Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c)

Defendant's Initials                     18

the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8. **Middle District of Florida Agreement**

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

9. **Filing of Agreement**

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10. **Voluntariness**

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other

Defendant's Initials (SS)                              19

than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are

Defendant's Initials                     20

felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.   Factual Basis

The defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

## FACTS

Beginning on an unknown date, but at least as early as in or around September 2019, and continuing until at least in or around April 2022, the defendant, SHANNON SAMLALSINGH, knowingly and willfully conspired with persons both known and unknown to the United States, to commit offenses against the United States, that is, to make false statements to a licensed firearm dealer, specifically, that SHANNON SAMLALSINGH was the actual transferee or buyer for firearms including a SAR Arms SAR-9 9mm pistol bearing serial number T1102-20BV75451, a Ruger Security-9 9mm pistol bearing serial number 384-03519, a Taurus G3 9mm pistol bearing serial number ABN369536, and a Taurus G2C 9mm pistol bearing serial number ABL113463, contrary to 18 U.S.C. § 922(a)(6).

Defendant's Initials                     21

Evidence from an investigation conducted by Homeland Security Investigations ("HSI") and the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") revealed that SHANNON SAMLALSINGH of Tampa, Florida, purchased several firearms, including the firearms listed above, and firearms components in the Middle and Southern Districts of Florida which she later transferred to individuals known to the United States ("Individual-2" and "Individual-3") in the Tampa area.

Individual-3 later gave the firearms he received from SHANNON SAMLALSINGH to JAMEAL KAIA PHILLIP ("PHILIP"), TEVIN OBRIAN OLIVER ("OLIVER"), EDWARD SOLOMON KING III ("KING"), and SHEM WAYNE ALEXANDER ("ALEXANDER") and their conspirators—at their request. Financial records, including records from Western Union and MoneyGram, show that SHANNON SAMLALSINGH had engaged in various wire transactions, worth several thousand dollars, with OLIVER, Individual-2, and related individuals between 2020 and 2021. These transactions were intended to compensate SHANNON SAMLALSINGH for her purchases of firearms in the Middle and Southern Districts of Florida and their subsequent transfer to conspirators in and through the Middle District of Florida and the Southern District of Florida and elsewhere.

Defendant's Initials                     22

Specifically, on or about May 13, 2020, SHANNON SAMLALSINGH transferred approximately $1,000 to OLIVER. On or about May 22, 2020, SHANNON SAMLALSINGH received approximately $1,000 from OLIVER. On or about May 23, 2020, SHANNON SAMLALSINGH bought two Taurus pistols from a firearms store in Tampa, Florida. SHANNON SAMLALSINGH falsely stated on the ATF Form 4473 that she was the actual buyer or transferee of said firearms.

On or about May 26, 2020, OLIVER transferred approximately $1,000 to SHANNON SAMLALSINGH. On the same day, SHANNON SAMLALSINGH bought a Glock 26 pistol bearing serial number BDGF541 from a firearms store in Tampa, Florida. SHANNON SAMLALSING falsely stated on the ATF Form 4473 that she was the actual buyer or transferee of said firearm. On or about June 4, 2020, Individual-2 sent SHANNON SAMLALSINGH the phone number for Individual-3. On or about June 6, 2020, ALEXANDER sent PHILLIP a photograph of the Glock 26 pistol bearing serial number BDGF541, the same Glock 26 pistol that SHANNON SAMLALSINGH purchased on May 26, 2020.

In or around June 2020, SHANNON SAMLALSINGH transferred the two Taurus pistols she purchased on May 26, 2020 to Individual-3 in Tampa, Florida. In or around June 2020, Individual-3 drove the two Taurus pistols

Defendant's Initials                     23

and the Glock 26 pistol that Individual-3 had received from SHANNON SAMLALSINGH to a residence in Homestead, Florida associated with OLIVER. OLIVER and PHILLIP amassed firearms and firearms components in Homestead, Florida, where they would later conceal said firearms and firearms components to later smuggle to Trinidad.

On or about June 30, 2020, Individual-2 transferred approximately $1,509.58 to SHANNON SAMLALSINGH. On that same day SHANNON SAMLALSINGH transferred approximately $1,200 to OLIVER. On or about July 20, 2020, ALEXANDER, in phone messages, discussed with KING arranging a place for PHILLIP to stay to spend the night and "pack the stuff."

On or about July 10, 2020, Individual-2 transferred approximately $503.14 to SHANNON SAMLALSINGH. On the same day, SHANNON SAMLALSINGH transferred approximately $600 to OLIVER. On or about July 26, 2020, PHILLIP sent ALEXANDER a photograph of a message thread containing prices for various Glock pistols. ALEXANDER then forwarded to PHILLIP the contact information for SHANNON SAMLALSINGH.

In late July 2020, PHILLIP and KING discussed methods to smuggle the illegally obtained firearms to Trinidad and Tobago using large Bluetooth

Defendant's Initials                       24

speakers where they would conceal the firearms inside. On or about July 31, 2020, PHILLIP and ALEXANDER exchanged phone messages, in which they discussed shipping a speaker to SHANNON SAMLALSINGH. On or about August 15, 2020, Individual-2 told SHANNON SAMLALSINGH to ship a set of speakers to PHILLIP at the address associated with PHILLIP in Pembroke Pines, Florida. On or about August 18, 2020, PHILLIP sent ALEXANDER a video depicting him concealing firearms inside of a speaker, as well as photographs of firearms.

On or about October 31, 2020, SHANNON SAMLALSINGH bought a Taurus G2C 9mm pistol bearing serial number ABL113463 from a firearms store in Tampa, Florida. SHANNON SAMLALSINGH completed an ATF Form 4473 for the purchase of said firearm where she falsely stated that she was the actual buyer or transferee of said firearm. The Taurus G2C firearm bearing serial number ABL113463 was later recovered in Trinidad and Tobago.

On or about December 21, 2020, OLIVER transferred $500 to SHANNON SAMLALSINGH. One day later, SHANNON SAMLALSINGH bought the SAR Arms SAR-9 9mm pistol bearing serial number T1102-20BV75451 from a firearms store in Tampa, Florida. SHANNON SAMLALSINGH completed an ATF Form 4473 for the

Defendant's Initials                 25

purchase of said firearm where she falsely stated that she was the actual buyer or transferee of said firearm. The SAR Arms SAR-9 firearm was later recovered in Trinidad and Tobago.

On or about January 15, 2021, SHANNON SAMLALSINGH bought the Taurus G3 9mm pistol bearing serial number ABN369536 and the Ruger Security-9 9mm pistol bearing serial number 384-03519 from a firearms store in Tampa, Florida. SHANNON SAMLALSINGH completed an ATF Form 4473 where she falsely stated that she was the actual buyer or transferee of said firearms. The Taurus G3 pistol and the Ruger Security-9 pistol were both recovered in Trinidad and Tobago.

On or about January 27, 2021, SHANNON SAMLALSINGH bought approximately 9 firearm magazines online from a store in Hialeah, Florida. SHANNON SAMLALSINGH arranged to have the magazines shipped to PHILLIP at the address associated with PHILLIP in Pembroke Pines.

On or about April 7, 2021, ALEXANDER directed OLIVER to ship a package concealing and containing various firearms and related equipment, including the SAR Arms SAR-9 9mm pistol purchased by SHANNON SAMLALSINGH, the Taurus G3 9mm pistol and the Taurus G2C purchased by SHANNON SAMLALSINGH, and the Ruger Security-9 9mm pistol purchased by SHANNON SAMLALSINGH, from Miami, Florida to

Defendant's Initials                 26

Trinidad and Tobago.

On or about April 21, 2021, authorities in Trinidad and Tobago seized a shipment containing two punching bags and other goods. That shipment had been sent from the United States to Trinidad and Tobago. Concealed within the two punching bags were approximately eleven 9mm pistols, two .38 caliber special revolvers, a 12 gauge semi-automatic shotgun, three AR-15 barrel foregrips, 19 lower pistol grip assemblies, 11 forearm bolt assemblies, three AR-15-style barrels with forearm grips, 32 AR-15 magazines, one AR-15 drum magazine, 470 rounds of AR-15 ammunition, 34 9mm magazines, three 9mm drum magazines, 284 9mm rounds, fifteen .38 caliber rounds, 36 shells, six magazine couplers, and two shotgun chokes. Of note, the seizure included the following firearms purchased by SHANNON SAMLALSINGH where SHANNON SAMLALSINGH falsely stated on the respective ATF Form 4473s that she was the actual transferee or buyer.

   a. The SAR Arms SAR-9 9mm pistol with serial number T1102-20BV75451;
   b. The Ruger Security-9 9mm pistol with serial number 384-03519;
   c. The Taurus G3 9mm pistol with serial number ABN369536; and
   d. The Taurus G2C 9mm pistol with serial number ABL113463

Defendant's Initials _SS_                    27

12.    <u>Entire Agreement</u>

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

13.    <u>Certification</u>

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this __19__ day of _February_____, 2025.

_____
Shannon Nicole Samlalsingh
Defendant

_____
Mark J. O'Brien, Esq.
Attorney for Defendant

SARA C. SWEENEY
Acting United States Attorney

_____
for: David W.A. Chee
Assistant United States Attorney

_____
for: Daniel Baeza
Assistant United States Attorney
Chief, Transnational Organized Crime Section

Defendant's Initials _____            28