UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                           CASE NO. 8:25-cr-108-WFJ-NHA

SHANNON NICOLE SAMLALSINGH
   a/k/a SHANNON NICOLE LEE

## THE UNITED STATES'S SENTENCING MEMORANDUM

Defendant Shannon Nicole Samlalsingh, also known as Shannon Nicole Lee, conspired to make false statements to firearms dealers.  The defendant, then a public schoolteacher, agreed to falsely state that she was the actual buyer of seven firearms on federal forms.  In reality, the defendant intended to, and did, transfer those firearms to a transnational criminal organization for smuggling into Trinidad and Tobago ("Trinidad").  Given the seriousness of this offense, the United States respectfully requests that the Court sentence the defendant to a sentence of 15 months of imprisonment.

## I.   BACKGROUND

### a. Facts

The parties have no objections to the facts in the Pre-sentence Investigation Report (the "Report").  From 2007 to 2023, the defendant worked as a schoolteacher with the Hillsborough County Public School District.  Report ¶ 71.  But beginning in 2019, the defendant began working with a Trinidad transnational criminal to buy firearms for smuggling to Trinidad.  Report ¶ 2.  That organization transferred the

defendant money for buying firearms.  Report ¶ 11.  It also directed the defendant to ship a set of speakers to codefendant Jameal Kaia Phillip.  Report ¶ 20.  Phillip concealed firearms in speakers for smuggling to Trinidad.  Report ¶¶ 19, 20; *see also* Plea Agreement at 23, Case No. 8:22-cr-343-SDM-AEP, Doc. 69.

The Report finds that the defendant bought seven firearms for the Trinidadian organization.  Report ¶ 28.  Each time the defendant bought a firearm, she falsely stated on Bureau of Alcohol, Tobacco, Firearms, and Explosives forms that she was the actual transferee or buyer.  Report ¶ 27.  But, the defendant intended to transfer those firearms to her coconspirators and knew that they would smuggle them into Trinidad.  Report ¶ 28.

### b.  Procedural History

In October 2022, a grand jury charged Tevin Obrian Oliver, Phillip, and Edward Soloman King, III with one count of conspiracy to smuggle firearms from the United States, in violation of 18 U.S.C. §§ 371 and 554.  Case No. 8:22-cr-343-SDM-AEP, Doc. 1.  Oliver and Phillip both pleaded guilty to that count and, in July 2023, received 57 months of imprisonment.  *Id.*, Docs. 111, 120.

In April 2023, King pleaded guilty to a superseding information that charged him with knowingly selling a firearm to an alien admitted to the United States under a nonimmigrant visa, in violation of 18 U.S.C. § 922(d)(5)(B).  *Id.*, Docs. 71, 72, 80.  In July 2024, after a Rule 5K1.1 motion, King also received a 57-month prison sentence.  *Id.*, Docs. 144, 145.  In February 2025, the Court granted the United

States's Rule 35 motion to reduce King's sentence and lowered his sentence to 46 months. *Id.*, Doc. 170.

In April 2024, a grand jury charged Shem Wayne Alexander, a Trinidad-based manager of the conspiracy, with one count of conspiracy to traffic firearms. Case No. 8:24-cr-164-JLB-AAS, Doc. 1. In October 2024, the grand jury returned a superseding indictment, which added a count of conspiracy to smuggle firearms from the United States, in violation of 18 U.S.C. §§ 371 and 554. Case No. 8:24-cr-164-JLB-AAS, Doc. 1. In August 2025, Alexander pleaded guilty to that new count per a plea agreement. *Id.*, Docs. 63, 65. In February 2026, Alexander received a 57-month prison sentence. *Id.*, Doc. 102.

### c. Gun Trafficking in Trinidad

Gun violence is rife in Trinidad, and the defendant has been exposed to this problem. Since pleading guilty, the defendant has spent months in Trinidad. *See* Report ¶ 60. On March 2, 2026, the government declared a state of emergency because of "a spike in violent criminal activity, mainly carried out by members of organized criminal gangs." Security Alert: State of Emergency in Effect for Trinidad and Tobago, U.S. Embassy in Trinidad and Tobago (Mar. 4, 2026), https://tt.usembassy.gov/security-alert-state-of-emergency-in-effect-for-trinidad-and-tobago. That followed a state of emergency that the government declared in July 2025 that lasted three months. State of Emergency Extended, U.S. Embassy in Trinidad and Tobago (July. 31, 2025), https://tt.usembassy.gov/state-of-emergency-in-effect/.

And gun violence was prevalent at the time of the defendant's offense conduct. According to an April 2023 report published by the Small Arms Survey, in 2020, Trinidad experienced one of the highest homicide rates of the Caribbean Community ("CARICOM") member states (28.5 per 100,000 population). *See* Ex. 1, at 37 (Anne-Séverine Fabre, Nicolas Florquin, Aaron Karp, & Matt Schroeder, *Weapons Compass: The Caribbean Firearms Study* (April 2023). Seventy-five percent of total homicides in Trinidad that year involved the use of a firearm. *Id.* at 38. Gang violence, drug trafficking, and access to illicit firearms have contributed to the rise of gun violence. *Id.* Trinidad reportedly has more than 100 gangs, many of which are involved in trafficking and misuse of firearms. *Id.* at 41. Between 2017 and 2021, police in Trinidad seized approximately 4,087 illicit firearms, the majority of which were handguns. *Id.* at 71. The Trinidad Commissioner of Police filed a statement in connection with the coconspirators' sentencings, which noted that gun violence "has become progressively worse with the illegal importation of firearms from the United States." Ex. 2, at 1 (Police Commissioner Letter). Trinidad does not manufacture firearms, but 84% of the murders in the five years prior to 2023 involved one. *Id.*

The United States is one of the largest sources of arms trafficking in the Caribbean. Ex. 1, at 75. Most of these firearms and ammunition are traced to states with seaports—Florida is high on the list—and are transported via shipping companies, postal and fast parcel services, and commercial airliners. *Id.* at 76, 80. The Commissioner of Police noted that gun trafficking in Trinidad also harms the reputation of the United States in the Caribbean region. Ex. 2, at 2. Moreover, as in

this case, concealing these firearms to evade detection is simple: "[t]he trafficker simply needs to camouflage the items well enough to blend in with the thousands of shipments of other goods departing and arriving from international ports every day." Ex. 1, at 79.

## II.    THE BASE OFFENSE LEVEL IS 14

The parties agree that the defendant is in Criminal History Category I, that USSG §2K2.1 provides the base offense level and adjustments, that her specific offense characteristics warrant a four-level upward adjustment, and that she should receive a three-level downward adjustment for acceptance of responsibility.  The parties disagree, however, about the correct base offense level.  It should be 14 because the defendant (1) was "convicted under 18 U.S.C. § 922(a)(6)" and (2) "committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person." USSG §2K2.1(a)(6)(C).

The defendant resists this conclusion on the ground that she was convicted of conspiring to violate § 922(a)(6), not the substantive offense.  *See* Doc. 40, at 2.  But her argument is misplaced for two reasons.  *First*, the Sentencing Guidelines provide that the base offense level for a conspiracy should match the base offense level for a substantive offense:  §2X1.1(a) explicitly instructs that the base offense level for a conspiracy is "the guideline for the substantive offense." And, application note 2 to USSG §2X1.1 reiterates that the base offense level for a conspiracy "will be the same as that for the substantive offense."  Application note 7 to USSG §1B1.3 also

5

confirms that "[u]nless otherwise specified, an express direction to apply a particular factor only if the defendant was convicted of a particular statute includes the determination of the offense level where the defendant was convicted of conspiracy . . . in respect to that particular statute."

The Eleventh Circuit's analysis in its unreported *United States v. Valdez* decision is persuasive on this point. 2021 WL 3478402 (11th Cir. 2021). There, the defendant pleaded guilty to conspiring to violate 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c), in violation of 18 U.S.C. § 1594. *Id.* at *4-5. The defendant objected to the district court applying the base offense level for a violation of (b)(2) because he argued that he was convicted under § 1594, not § 1592(b)(2). *Id.* at *4. The Eleventh Circuit rejected that argument because the Guidelines' plain text and commentary require the base offense level for a conspiracy to match that for the substantive offense. *Id.* at *5. This Court should rule the same.

***Second***, the defendant's plea agreement included factual stipulations making clear that she actually did make false statements to firearms dealers. A written plea agreement "containing a stipulation that specifically establishes the commission of additional offense(s) shall be treated as if the defendant had been convicted of additional count(s) charging those offense(s)." USSG §1B1.2(c). In her plea agreement, the defendant admitted to falsely stating that she was the true buyer of the firearms named in the Information, not merely conspiring to do so. Doc. 4, at 21-27.

6

The defendant does not contest that she had, at the very least, "reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person." She agreed to make false statements in order to buy firearms for others. *E.gs.*, Report ¶¶ 12, 13, 21, 22. She also knew that the firearms would be transferred to Trinidad. Report ¶ 28. Put simply, the defendant agreed, and actually did, make false statements during firearms purchases because she was buying firearms for people who could not lawfully do so. Therefore, §2K2.1(a)(6)(C) applies, setting the base offense level at 14.

## III.    APPLICATION OF 3553(a) FACTORS

The United States respectfully submits that 15 months in prison, to be followed by three years of supervised release, is "sufficient, but not greater than necessary," to serve the purposes set forth in 18 U.S.C. § 3553(a).

First, the nature and circumstances of the offense favor such a sentence, especially when viewed in the context of the arms trafficking scourge affecting Trinidad. Here, this defendant used her status as a U.S. citizen and schoolteacher to fraudulently buy firearms for criminals. The defendant's conduct fueled the ongoing gun and gang violence in Trinidad and the wider Caribbean region.

The history and characteristics of the defendant similarly call for a 15-month prison sentence. This defendant did not commit this crime out of desperation or a youthful indiscretion: she was a middle-aged, adult woman entrusted with teaching and mentoring children. Notwithstanding her responsibility to the public, the defendant lied to obtain firearms for a criminal organization.

7

Relatedly, a term of imprisonment of 15 months will "reflect the seriousness of the offense. . . promote respect for the law, and . . . provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The defendant's gun purchases provided firepower for dangerous gangs in Trinidad and the wider Caribbean region. She lied on official U.S. government forms, a serious offense to the integrity of our nation's lawful firearms markets. The defendant should thus receive a significant custodial sentence.

In addition, the requested sentence will deter the defendant (and other gun traffickers) and protect the public from this defendant's future crimes. *Id.* § 3553(a)(2)(B), (C). For some in the United States, lying to buy firearms for those abroad may seem like a low-risk venture. They may believe that nobody will be able to trace firearms seized in violent countries far away back to them. This case shows that they are wrong. A significant custodial sentence here may deter others from the same conduct by showing that offenders will be caught and punished. *See United States v. Howard*, 28 F.4th 180, 208 (11th Cir. 2022) ("[G]eneral deterrence is a critical factor that must be considered and should play a role in sentencing defendants.").

Finally, a 15-month sentence avoids "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See id.* § 3553(a)(6). Alexander, Oliver, and Phillip received 57-month sentences each. After Rule 5K1.1 and 35 motions, King received 46 months' imprisonment. This defendant is most similarly situated to King, who purchased 13 firearms for the conspiracy, transferred another from another straw purchaser, and received

substantial assistance motions that lowered his offense level by four.  *See* Case No. 8:22-cr-343, Doc. 133, at 2-3, Doc. 145; Doc. 170.  This defendant bought seven firearms (half as many as King did).  Accordingly, a sentence of 15 months would reflect the defendant's lesser role in the offense without creating a disparity by not imposing a custodial sentence.

## IV.    CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court sentence the defendant to a term of imprisonment of 15 months and three years of supervised release.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    /s/ *Adam W. McCall*
       Adam W. McCall
       Assistant United States Attorney
       United States Attorney No. 226
       400 N. Tampa Street, Suite 3200
       Tampa, Florida 33602-4798
       Telephone:   (813) 274-6000
       Facsimile:    (813) 274-6358
       E-mail: Adam.McCall@usdoj.gov

9

**U.S. v. Shannon Nicole Samlalsingh**          **Case No. 8:25-cr-108-WFJ-NHA**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 10, 2026, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice of

electronic filing to the following:

Mark J. O'Brien, Esq.

<u>/s/ *Adam W. McCall*</u>
Adam W. McCall
Assistant United States Attorney
United States Attorney No. 226
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Adam.McCall@usdoj.gov

10